**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL JOHN BOYLE, | : |
| Plaintiff, | : Civil Action No. 15-7027 (MAS) |
| v. | : |
| COMMISSIONER OF SOCIAL SECURITY, | : **MEMORANDUM OPINION** |
| Defendant. | : |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Michael John Boyle's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill,[1] Acting Commissioner of the Social Security Administration ("Defendant" or "the Commissioner"), denying his request for benefits. (ECF No. 1.) The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the decision of the administrative law judge ("ALJ").

**I.   BACKGROUND**

   **A.   Procedural History**

On January 16, 2013, Plaintiff filed an application for Social Security Disability Insurance (SSD), alleging a disability onset date of July 4, 2007. (Administrative Transcript ("Tr.") 179-87.)[2]

---

[1] Nancy A. Berryhill has succeeded Carolyn W. Colvin as the Acting Commissioner of the Social Security Administration.

[2] The Administrative Transcript is located at ECF Numbers 8-1 through 8-8. This Memorandum Opinion only references the actual page numbers of the Administrative Transcript and not the corresponding ECF numbers.

On July 23, 2013, Plaintiff filed an application for Supplemental Security Income (SSI) benefits, alleging the same disability onset date. (*Id.* at 195-200.) Plaintiff's applications were denied initially and on reconsideration. (*Id.* at 144-52.) The ALJ conducted a hearing on August 4, 2014 (*id.* at 53-97) and, on January 20, 2015, the ALJ found that Plaintiff was not disabled (*id.* at 48). On July 31, 2015, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1.) Plaintiff subsequently filed the instant appeal. (Compl., ECF No 1.) Plaintiff filed his moving brief on November 4, 2016. (ECF No. 14.)

B.  **The ALJ's Decision**

On January 20, 2015, the ALJ rendered his decision. (Tr. 22-48.) The ALJ initially noted that in addition to the issue of whether Plaintiff was disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("the Act"), there is an issue as to whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Act. (*Id.* at 22.) The ALJ found that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2009. (*Id.*) As such, the ALJ indicated that Plaintiff must establish disability on or before December 31, 2009, in order to be entitled to benefits. (*Id.* at 23.)

The ALJ next set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 23-24.) As to the first step of the sequential process, the ALJ found that Plaintiff did not engage in any substantial gainful activity since July 4, 2007, the alleged disability onset date. (*Id.* at 24.) At step two of the sequential analysis, the ALJ found that the medical evidence established the existence of the following severe impairments: "cervical, thoracic and lumbar degenerative joint disease, degenerative joint disease of the knees, vertigo, migraine headaches, major depressive disorder, NOS,[3] and generalized

---

[3] "Not Otherwise Specified."

anxiety disorder." (*Id.* at 25.) The ALJ then found Plaintiff's alleged conditions of elevated liver enzymes, hyperlipidemia, coronary artery disease, allergic rhinitis, obesity and hypertension to be non-severe and set forth the reasons as to each determination. (*Id.* at 25-28.) At step three of the sequential analysis, the ALJ found that none of Plaintiff's impairments met or medically-equaled the severity of one of the Listed Impairments in 20 C.F.R. 404 subpart P, Appendix 1. (*Id.* at 28.) With respect to Plaintiff's physical impairments, the ALJ stated that he specifically reviewed listings 2.07, 11.02, and 11.03. (*Id.* at 29.) The ALJ also provided a detailed analysis of the "paragraph B" criteria in reaching his determination that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. (*Id.* at 29-31.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can perform occasional climbing of ramps and stairs, but no climbing of ropes, ladders or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; avoid all exposure to hazards such as unprotected heights and moving machinery; he could perform unskilled work involving routine and repetitive tasks with occasional changes in the work setting; no quota or production based work but rather goal oriented work and occasional interaction with members of the public.

(*Id.* at 31-32.)

At step four of the sequential analysis, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 47.) The ALJ stated that Plaintiff was born on September 20, 1969, and was thirty-seven years old, defined as a younger individual 18-49, on the alleged disability onset date. (*Id.*) The ALJ noted that Plaintiff "has at least a high school education and is able to communicate in English." (*Id.*) The ALJ stated that transferability of job skills is not material to the disability determination because the use of the Medical-Vocational Rules as a framework

3

supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills. (*Id.*) At step five of the sequential analysis, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (*Id.* at 47-48.) As such, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, from July 4, 2007, through the date of the decision. (*Id.* at 48.)

## II. DISCUSSION

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The district court must determine whether or not there is substantial evidence in the record to support the Commissioner's decision. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "more than a mere scintilla." *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). "It means such relevant evidence as a reasonable mind might accept as adequate." *Id.* In reviewing the record for substantial evidence, a court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford*, 399 F.3d at 552 (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

B. **Establishing Disability**

In order to be eligible for disability benefits, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For the first step, the claimant must establish that he has not engaged in any "substantial gainful activity" since the onset of his alleged disability. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

If the first two steps are satisfied, the third step requires the claimant to provide evidence that his impairment is equal to one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant demonstrates that he suffers from a listed

5

impairment or that his severe impairment is equal to a listed impairment, he is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If he cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his previous employment. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

If the claimant is unable to return to his previous work, the analysis proceeds to step five. At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with his medical impairments, age, education, past work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Palmer v. Comm'r of Soc. Sec.*, 410 F. App'x 490, 492 (3d Cir. 2011). If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *Id.*

### C. The ALJ's Decision Was Supported by Substantial Evidence

Plaintiff argues that the ALJ: (1) failed to fulfill his enhanced duty to Plaintiff as an unrepresented individual; (2) failed to combine and consider Plaintiff's severe and non-severe impairments at Steps Two and Three of the sequential analysis; and (3) set forth a RFC determination that was not supported by substantial evidence. The Court will examine each in turn.

#### 1. The ALJ's Duty to Plaintiff as an Unrepresented Individual

Plaintiff acknowledges that a Social Security claimant can waive the right to counsel. (Pl.'s Moving Br. 17, ECF No. 14.) Plaintiff, however, asserts that a lack of counsel is sufficient to require a remand when the lack of counsel results in "prejudice or unfairness in the conduct of the

hearing or issuance of the decision." (*Id.* (citing *Dobrolowsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).) Plaintiff argues that even assuming that the ALJ was capable of eliciting an intelligent, knowing waiver from Plaintiff, the ALJ did not observe the heightened duty owed to Plaintiff "and was not especially diligent in insuring that favorable as well as unfavorable evidence was developed and considered." (*Id.* at 18.) Plaintiff, therefore, argues that the Court should remedy the ALJ's error by remanding for a new hearing where Plaintiff will be represented by competent counsel.[4] (*Id.* at 18.)

Defendant argues that Plaintiff knowingly and intelligently waived his right to counsel. (Def.'s Opp'n Br. 6, ECF No. 17.) In addition, Defendant asserts that the record demonstrates that the ALJ fully and fairly developed the record on Plaintiff's behalf. (*Id.* at 8.) According to Defendant, "Plaintiff's attempts to . . . undermine the ALJ's development of the record are baseless." (*Id.* at 9.) Defendant, accordingly, argues that the Court should deny Plaintiff's request to remand based on Plaintiff's lack of legal representation at the hearing. (*Id.* at 10.)

The Court has carefully reviewed the record in this matter and finds that: (1) Plaintiff executed a knowing and intelligent waiver of counsel; (2) the ALJ fully and fairly developed the record; and (3) the administrative hearing was not marked by unfairness due to Plaintiff's lack of counsel. First, the transcript reflects that the ALJ clearly advised Plaintiff of his right to counsel. (Tr. 56-57.) The ALJ engaged in the following colloquy with Plaintiff at the beginning of the hearing:

> ALJ: Before I proceed any further, I do need to ensure that you understand your rights to representation. So what I'm going to do, Mr. Boyle, is I'm going to review with you your rights to representation. And after I do that I'm going to give you the option of either requesting a postponement so that you can have more time to find a representative, or the option to proceed on your own behalf today without representation. Do you understand?

---

[4] Plaintiff's counsel on the current appeal did not represent Plaintiff at the time of the hearing.

7

[PLAINTIFF]: Yes.

ALJ: Okay. Mr. Boyle, you have the right to be represented by an attorney or a qualified non-attorney. A representative can help you obtain information about your claim, submit evidence, explain medical terms, help protect your rights, and make any requests or give any notice about the proceedings before me. Now a representative may not charge a fee or collect a fee unless I approve it and the type of fee agreement between someone seeking Social Security Disability and a representative is known as a contingency fee agreement. And what that means is if I find that you are not disabled, you would owe no fee for the representative's services. It also means that if I find that you are disabled, your fee would be the lesser of 25 percent of any past due benefits or $6,000. You would not have to pay any retainer up front under a contingency fee agreement. Some contingency fee agreements provide that you would be responsible for expenses such as obtaining or copying medical records. There are some legal service organizations that offer representation free of charge if you satisfy the qualifying requirement of that organization.

You also have the right to proceed without the representative and if you do so, I will obtain any outstanding relevant medical and non-medical records and ask you questions at the hearing. Nevertheless, a representative can present your evidence in a way that's most favorable to your case.

All right. So, Mr. Boyle, do you understand your rights to representation?

[PLAINTIFF]: Yes.

ALJ: And what would you like to do today, sir?

[PLAINTIFF]: Proceed without an attorney.

(*Id.*)[5]

---

[5] At the beginning of the hearing, the ALJ also questioned Plaintiff regarding his medical records. (Tr. 57-62.) During the discussion, Plaintiff indicated that certain medical records were missing and stated, "there were multiple disorders that they described [sic] me with. They said that I have schizophrenia, then somebody else told me that I had bipolar, and none of those things say any of that, which was what was being told to me while I was there, which doesn't make sense to me." (*Id.* at 58-59.) The ALJ admitted the records into evidence and stated that the record would be kept open for thirty days following the hearing to obtain updated medical records. (*Id.* at 61-62, 96.)

8

At the end of the August 4, 2014 hearing, the ALJ again reiterated that he would leave the record open for thirty days in order to obtain updated treatment records. (*Id.* at 95.) On November 7, 2014, the ALJ sent Plaintiff correspondence indicating that he secured additional evidence that the ALJ proposed to enter onto the record.[6] (*Id.* at 284.) The ALJ's November 7, 2014 correspondence also advised Plaintiff that he had the right to take certain actions, such as: (1) submit written comments concerning the additional evidence; (2) submit a written statement with respect to the facts and law that apply in light of the additional evidence; (3) submit additional

---

The Court has combed through the administrative Transcript, including all of the medical records in the file. While Plaintiff listed "sychizophrenia" [sic] on certain disability-related forms in support of his application (*see, e.g.*, Disability Report, Tr. 219), none of Plaintiff's medical records reflects a diagnosis of schizophrenia. In addition, although one medical record dated October 8, 2008 noted that Plaintiff complained of "'a lot of visions' and hearing noises" (*id.* at 304), the vast majority of Plaintiff's medical records reflect that Plaintiff denied hearing voices. For example, a September 22, 2010 mental health consult record provides:

> Delusions & Hallucinations: denied hearing voices, indicated that he doesn't "hear" god, he described it as "an epiphany that following god was all of a sudden a piece of a puzzle." [D]enied hallucinations; reported to [sic] prior to this, he was "self righteous" and cared mostly about work.
>
> Veteran does not appear to be experiencing symptoms of psychosis (e.g., hearing voices.) He was clear that he doesn't "hear" god in terms of assessing for auditory hallucinations, but "follows the word of god." Will continue to monitor and assess.

(Tr. 340.) The medical records in this matter reflect that Plaintiff suffers from major depressive disorder and generalized anxiety (*see generally* Tr.), which is consistent with the ALJ's findings of major depressive disorder and generalized anxiety as two of Plaintiff's severe impairments. (Tr. 25.) Moreover, Plaintiff does not argue on appeal that he was ever diagnosed with schizophrenia. Consequently, there is nothing in the record that would lead the Court to believe that Plaintiff was incapable of entering into a knowing and voluntary waiver of his right to representation.

[6] The additional evidence consisted of: "Progress Notes from VA Medical Center – East Orange, NJ; Office Treatment Records from Ocean Grove Family Chiropractic; Emergency Department Records from Jersey Shore Unversity [sic] Medical Center; Oswestry Assessment from Ocean Grove Family Chiropractic; [and] Hospital Records – Pre-Admission Screening from CentraState Medical Center." (Tr. 284.)

9

records for the ALJ to consider; (4) request a supplemental hearing during which Plaintiff would be able to appear, testify, produce witnesses, and submit additional evidence and oral or written statements concerning the facts and law. (*Id.*) This additional opportunity to submit comments, a written statement, additional records, and/or to request a supplemental hearing also represented an additional opportunity to retain counsel. Plaintiff did not avail himself of the opportunity. Instead, a Report of Contact form in the record provides that Plaintiff stated during a telephone call that he did not want to respond to the ALJ's proffer notice and had no other evidence. (*Id.* at 286.) Here, the Court has carefully reviewed the hearing transcript and the record as a whole and does not find error on the part of the ALJ with respect to the conduct of the hearing or issuance of the decision. The Court finds that Plaintiff entered into a knowing and intelligent waiver of counsel and denies Plaintiff's appeal on this ground.

    2.    <u>The ALJ's Alleged Failure to Combine and Consider Plaintiff's Severe and Non-Severe Impairments at Steps Two and Three of the Sequential Analysis</u>

Plaintiff argues that "[d]isc/joint disease at all [three]-levels of [P]laintiff's spine, all acknowledged to be severe and having required cervical fusion surgery, were never compared alone against the requirements of 1.04 reserved by the Commissioner for spinal impairments, and . . . were never mentioned at all in the step [three] medical equivalence discussion." (Pl.'s Moving Br. 21.) Plaintiff additionally argues that "[t]he two non-severe impairments of coronary artery disease and fatty liver disease, required for discussion in addition to acknowledged severe impairments at step [three], were likewise omitted from the step [three] discussion." (*Id.* at 21-22.) According to Plaintiff, "aside from the templated, bold-typed finding at step [three] (Tr. 28), the decision does not even claim to have considered the combined effect of [P]laintiff['s] eight severe and two non-severe impairments or to have engaged in a medical equivalence evaluation." (*Id.* at 22.)

Defendant argues that the ALJ's step three determination was supported by substantial evidence. (Def.'s Opp'n Br. 12.) Defendant further argues that "Plaintiff does not explain how his impairments were presumptively disabling at step three, nor does he identify any credible medical findings whatsoever that could possibly support a step-three determination in his favor." (*Id.* at 11.) According to Defendant, Plaintiff's undeveloped and unsubstantiated assertions with respect to coronary artery disease, fatty liver disease, and disc/joint disease at step three are insufficient to establish harmful error requiring remand, especially as Plaintiff bears the burden of proof at step three. (*Id.* at 12.) Defendant cites *Holloman v. Commissioner of Social Security* in support of its position. (*Id.* (citing 639 F. App'x 810, 814 (3d Cir. 2016)).)

The Court finds *Holloman v. Commissioner of Social Security* persuasive. In *Holloman*, the Third Circuit stated:

> [The plaintiff] also complains in vague terms that certain impairments were not properly compared, separately and in combination, to the listings. But he does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not. Whether or not the ALJ's analysis of these impairments was sufficiently thorough, [the plaintiff] offers no explanation of how further analysis could have affected the outcome of his disability claim. Even if we found a portion of the ALJ's step-three analysis to be deficient, we would have no reason to conclude that the deficiency in analysis was harmful to [the plaintiff's] claim.

(Def.'s Opp'n Br. 12 (citing *Holloman*, 639 F. App'x at 814).) Here, the Court finds that Plaintiff did not meet his burden of demonstrating that the ALJ erred at step three. Accordingly, the Court upholds the ALJ's step three determination.

3. <u>Plaintiff's RFC</u>

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Moving Br. 22.) In addition, Plaintiff argues that the ALJ's "decision provides no transitional

articulation between the evidence recited in the decision and the physical and mental RFCs upon which the issue of disability was decided." (Pl.'s Moving Br. 22-25.) Plaintiff asserts that his RFC is beyond judicial review because the Court cannot determine how the ALJ arrived at his findings. (*Id.* at 25.) Plaintiff further argues that: (1) although Plaintiff has two arthritic knees, both exhibiting joint effusion, crepitus and tenderness, the ALJ found him capable of standing all day in the performance of work activity; (2) although Plaintiff suffers from spinal disc/joint disease and had a cervical spine fusion, the ALJ dismissed or ignored his pain and did not discuss Plaintiff's "announced ability to lift and carry weights all day"; and (3) the RFC did not accurately account for Plaintiff's psychiatric impairments, resulting in the ALJ's failure to convey all of Plaintiff's credibly established limitations to the vocational expert ("VE"). (*Id.* at 22-30.)

Defendant argues that the ALJ "comprehensively articulated why the totality of the evidence supported the RFC finding." (Def.'s Opp'n Br. 13.) Defendant further argues that Plaintiff did not identify the limitations that the ALJ omitted from the RFC finding or cite to any credible medical evidence that would support a greater reduction in Plaintiff's RFC. (*Id.* at 16.) In addition, Defendant asserts that "[t]he mental limitations identified by the ALJ far exceed the limitations that numerous courts . . . have upheld as sufficient to account for moderate concentration, persistence, or pace deficits." (*Id.* at 17.)

Regulation 20 C.F.R. §§ 404.1545(a)(3) states, "[w]e will assess your [RFC] based on all of the relevant medical and other evidence . . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations." Notably, if an ALJ is faced with conflicting medical conclusions, he "is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d

Cir. 1981). Additionally, the ALJ must explain why evidence has been rejected. *Id.* As set forth earlier, the ALJ found that Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can perform occasional climbing of ramps and stairs, but no climbing of ropes, ladders or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; avoid all exposure to hazards such as unprotected heights and moving machinery; he could perform unskilled work involving routine and repetitive tasks with occasional changes in the work setting; no quota or production based work but rather goal oriented work and occasional interaction with members of the public.

(Tr. 31-32.)

In making the RFC determination, the ALJ discussed Plaintiff's hearing testimony, including: (1) the history of Plaintiff's physical and mental conditions; (2) that Plaintiff's alleged disability onset date corresponds to the day his wife asked him for a divorce; (3) the symptoms Plaintiff experiences due to his physical and mental conditions; (4) the treatment Plaintiff has received for his conditions; (5) that Plaintiff does not take pain medication or medication for depression or anxiety due to fears of becoming addicted; and (6) that Plaintiff can lift and carry up to 25 pounds, walk 500 feet, stand for one hour, sit for a long time but with pain, bend, stoop, kneel, and squat but cannot handle a forty-hour work week. (*Id.* at 32-33.) In reaching the RFC determination, the ALJ also discussed the medical records regarding Plaintiff's treatment for vertigo, migraine headaches, knee degenerative joint disease, thoracic/lumbar degenerative joint disease, cervical degenerative joint disease, and Plaintiff's mental impairments. (*Id.* at 33-40.) The ALJ's decision also included the specific reasons underlying his findings that: (1) Plaintiff's statements concerning the persistence, intensity, and limiting effects of his symptoms were not entirely credible; and (2) the record does not document sufficient objective medical evidence to

13

substantiate the degree of functional limitations and the severity of the pain Plaintiff alleged.[7] (*Id.*)

Here, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

## III. CONCLUSION

For the reasons set forth above, the decision of the ALJ is affirmed. An appropriate order accompanies this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** May 31, 2017

---

[7] In his decision, the ALJ indicated that Plaintiff "was able to travel to Portugal for [nine] days with no increase in his symptomatology while visiting a foreign country and needing to adapt [sic] the changes involved in traveling to a foreign country." (Tr. 31.) In addition, the decision mentioned Plaintiff's graduate level courses. (*Id.*) Section VII of Plaintiff's brief, which provided a summary of Plaintiff's arguments, stated:

> Although no longer in any type of school, on-line or off, [Plaintiff] imagined a "scholarship" grant provided by the same school that he believed would ultimately grant him a Doctorate in Physics, which would send him to Portugal for a [nine] day trip. He was to "leave Friday." (Tr.447). The school, the doctoral program, the theological requirements, the scholarship and the Portuguese vacation are all non-existent.

(Pl.'s Moving Br. 10-11.) The Court finds these assertions troubling. The Court, nevertheless, notes that the ALJ supported his findings regarding Plaintiff's educational pursuits, including the trip to Portugal, with citations to Plaintiff's medical records. (Tr. 31.) Indeed, the Court's independent review of Plaintiff's medical records confirmed Plaintiff's discussions of his educational pursuits, including Plaintiff's trip to Portugal, with Plaintiff's medical providers. (*See, e.g.*, Tr. 345, 354, 355, 435.) Moreover, Plaintiff's brief contains no citations to relevant legal authority with respect to the impact Plaintiff's alleged misrepresentations to his own treating doctors should have on this Court's ultimate determination as to whether the ALJ's findings were supported by substantial evidence. As set forth earlier, the ALJ questioned Plaintiff in depth regarding his medical records, received updated medical records to add to Plaintiff's file, and offered Plaintiff the opportunity for a supplemental hearing and/or to submit additional records. (*Id.* at 284-85.) Plaintiff declined to exercise any of the options offered by the ALJ. (*Id.* at 286.) Based on a careful review of the record, the Court finds that the ALJ's decision was supported by substantial evidence.